JAMES FORRESTER & COMPANY, APPELLEE, V. KEARNEY NATIONAL BANK ET AL., APPELLANTS.

FILED NOVEMBER 18, 1896.    No. 6700.

1. **Statutes:** ADOPTION: CONSTRUCTION. Where the legislature adopts the statute of another state, it likewise adopts the judicial construction which it had already received by the highest court in such state.

2. **Chattel Mortgages:** REGISTRATION: ATTACHMENT. Where a mortgagee of personal property, without any intention to defraud, has delayed filing his mortgage and taking possession of the property, but the instrument is in fact filed, or the mortgagee obtains and holds actual possession of the property under the mortgage before the rights or lien of any third party attaches, the lien of the mortgage is good against a creditor of the mortgagor who subsequently causes the property to be seized upon attachment or execution.

3. ——: ——. *Farmers & Merchants Bank of York v. Anthony*, 39 Neb., 343, and *Spaulding v. Johnson*, 48 Neb., 830, distinguished.

APPEAL from the district court of Buffalo county. Heard below before HOLCOMB, J.

*Dryden & Main, Marston & Nevius,* and *John E. Decker,* for appellants.

*Calkins & Pratt* and *R. A. Moore,* for appellee.

NORVAL, J.

The record discloses that on the 4th day of June, 1890, one F. M. Harter, being indebted to the Kearney National Bank, executed to it a chattel mortgage on his stock of merchandise to secure the payment of said indebtedness. The mortgage was filed for record on the 5th day of July, 1890, and Harter's debt being unpaid, on the same day the bank took possession of the property under the mortgage. Two days later James Forrester & Co. commenced an action against said Harter for the recovery of the sum of $1,839.88 and caused an attachment to be issued and levied upon the property mentioned in the mortgage, although the same was at the time in the actual possession of the bank. Shortly thereafter the bank replevied the property from the sheriff, and subsequently disposed of the same under the mortgage. James Forrester & Co., after having obtained judgment in their action and an order for the sale of the attached property, instituted this action against the bank in the nature of a creditors' bill to have the mortgage to the bank declared void, and for an accounting to them for the value of the said goods taken possession of by the bank. Numerous other judgment creditors of Harter intervened in the action and filed cross-petitions. None of the judgments were recovered, nor was there any attachment proceedings commenced, until after the bank had filed its mortgage and was in possession of the property. The *bona fides* of the debt secured by the mortgage is conceded. The court below rendered a decree in favor of Forrester & Co., and dismissed the action as to all the intervenors. The bank and the intervenors prosecute separate appeals.

It is argued by the creditors of Harter that the mort-

gage in question is void under the provisions of section 14, chapter 32, Compiled Statutes, by reason of the delay of the bank in filing the instrument for record and in taking possession of the property. The statute invoked is in the following language:

"Sec. 14. Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditor of the mortgager, and as against subsequent purchasers and mortgagers in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the county clerk of the county where the mortgager executing the same resides, or in case he is a non-resident of the state, then in the office of the clerk of the county where the property mortgaged may be at the time of executing such mortgage, and such clerk shall indorse on such instrument or copy the time of receiving the same, and shall keep the same in his office for the inspection of all persons; and such mortgage or instrument may be so filed, although not acknowledged, and shall be valid, as if the same were fully spread at large upon the records of the county."

By force of the foregoing statute a chattel mortgage in this state is fraudulent and void as to three classes of persons, viz., creditors of the mortgagor, subsequent purchasers and mortgagees in good faith, where the mortgage or a copy thereof has not been filed in the manner prescribed by law, and the mortgagor has possession of the mortgaged chattels. Neither plaintiffs nor the intervenors are either mortgagees or purchasers of the property in dispute, but are creditors of Harter; and the question presented is whether, under the section of the statute copied above, and the undisputed facts, the mortgage to the bank is void as to such creditors. The precise point involved has been frequently adjudicated by the courts, but the decisions are not harmonious. We shall adopt

46

that construction of the section which gives effect to the intention of the legislature.

It is disclosed that the mortgage to the bank was given to secure a *bona fide* indebtedness; hence, as between the parties to the instrument, a valid lien was thereby created which continues so long as such debt subsists, notwithstanding the mortgage, or a copy thereof, was not forthwith filed, and the bank did not immediately take possession of the mortgaged chattels. (*Sanford v. Munford*, 31 Neb., 792.) But under the statute it could be made a valid and subsisting lien as to other creditors of the mortgagor in one of two ways,—by depositing the instrument, or a copy thereof, in the office of the county clerk of the proper county, or by the delivery of the mortgaged property to the mortgagee. It could be made valid at any time as to creditors who had not already acquired any rights or interests in the mortgaged property, by the proper filing of the mortgage. The statute does not limit the time in which it must be filed. A chattel mortgage becomes valid as to creditors as of the date of the filing of the same or the taking of actual possession of the property by the mortgagee.

In Jones, Chattel Mortgages, section 178, the rule is stated thus: "If a mortgagee take possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody, if it was previously valid between the parties, although it be not acknowledged and recorded, or the record be ineffectual by reason of any irregularity. The subsequent delivery cures all such defects. * * * Delivery of possession under a mortgage, before rights have been acquired by others, will cure any invalidity there may be in the instrument, whether arising from an insufficient description of the property, an insufficient execution of the instrument, the omission to record it or from its containing a provision which makes it void except as between the parties. * * * But, on the other hand, if a creditor of the mortgagor levies upon the property be-

fore the mortgage is recorded, and before the mortgagee has taken possession, the attachment lien is prior to the mortgage."

*Cameron v. Martin*, 26 Kan., 612, was an action of replevin to recover certain chattels. Plaintiffs claimed the property by virtue of four chattel mortgages, which were never recorded, and they did not take possession of the property until a long time after the mortgages were executed. Nine days after such possession was taken the defendant sued out an attachment against the mortgagor and levied it upon the property. It was held, under a statute precisely like ours, that the mortgages were valid from the time the mortgagees acquired possession of the property, covered by the mortgages. Valentine, J., in delivering the opinion of the court, observed: "We now come to the question, Did the mortgage become valid when the plaintiffs took possession of the property under them? We think we must answer this question in the affirmative. (*Dayton v. Savings Bank*, 23 Kan., 421; *Savings Bank v. Sargent*, 20 Kan., 576; *Nash v. Norment*, 5 Mo. App., 545; *Eastman v. Water Power Co.*, 24 Minn., 437; *Read v. Wilson*, 22 Ill., 377; *Frank v. Miner*, 50 Ill., 444; *Chipron v. Feikert*, 68 Ill., 284; *McTaggart v. Rose*, 14 Ind., 230; *Brown v. Platt*, 8 Bosw. [N. Y.], 324; *Brown v. Webb*, 20 O., 389; *Chapman v. Weimer*, 4 O. St., 481; *Field v. Baker*, 12 Blatch. [U. S.], 438.)" After quoting section 178, Jones, Chattel Mortgages, the opinion continues: "This statement of the law is undoubtedly in accordance with the great weight of authority.   *   *   *   Of course, a chattel mortgage not recorded of property not delivered is void as against all creditors who have no notice of the mortgage, but they have no right to, or interest in, any specific property until they have obtained this right or interest by some legal process. They have no more right to the property than the mortgagee has whose mortgage is void. They all have an equal right to the property,— that is, they all have a right to procure a lien upon it or an interest in it, by virtue of legal process, or chattel

mortgage, or purchase; and the one who first acts will
obtain the prior right in and to the property. If one of
the creditors already has a chattel mortgage upon the
property, he may file his mortgage or procure possession
of the property; and if he has done this with the consent
of the mortgagor, he has certainly obtained the prior
right to the property. The mortgagor has a continuing
right to mortgage his property to secure his debts so long
as he acts in good faith and does not mortgage property
already mortgaged to others. He has a right to prefer
one creditor over another; and he may prefer any one of
his creditors over any of the others. And if the mortga-
gee, whose mortgage is not recorded, and who does not
have possession of the property, records his mortgage
with the consent of the mortgagor, or takes possession of
the property with the consent of the mortgagor, his mort-
gage then has the force and effect of a mortgage exe-
cuted on the day on which it is filed for record, or on
which the property is delivered. It is the same then as
though a new mortgage had been executed by the parties
and recorded. The old mortgage is then given life and
force and effect by the joint action of both the parties,
and hence must be held to be valid from that time on,
against all persons."

McVay v. English, 30 Kan., 368, was a controversy be-
tween a mortgagor of chattels and an attachment cred-
itor. The mortgagor retained possession of the mort-
gaged property, and the mortgage was filed without the
consent of the mortgagor eighteen days after its execu-
tion. Two days later defendant levied an attachment on
the property, and plaintiff instituted replevin. The court
sustained the mortgage and held that the right of the
mortgagee to the possession of the mortgaged property
was paramount to that of the attaching creditor. (See
cases cited in the opinion of Cameron v. Marvin, supra, also
Corbin v. Kincaid, 33 Kan., 649; Dolan v. Van Dermark, 35
Kan., 304; Isenberg v. Fansler, 36 Kan., 402; Stuart v.
Smith, 14 N. W. Rep. [Ia.], 310; Barton v. Sitlington, 30

S. W. Rep. [Mo.], 514; *Trimble v. Keer*, 56 Mo. App., 683; *Blumenthal v. Lynch*, 11 N. Y. Supp., 382; *Applewhite v. Harrell Mill Co.*, 49 Ark., 279; *Garner v. Wright*, 52 Ark., 385; *Petring v. Heer Dry Goods Co.*, 3 S. W. Rep. [Mo.], 405.)

The statute of Ohio of 1846 declared: "That every mortgage or conveyance intended to operate as mortgage of goods and chattels, hereafter made, which shall not be accompanied by immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be forthwith deposited as directed in the succeeding section of this act." (Laws of Ohio, ch. 339, sec. 1.) The foregoing was under consideration in *Wilson v. Leslie*, 20 O., 161, and the court said: "A fair construction of this statute will not make the instrument inoperative as between the parties (mortgagor and mortgagee), although it be not forthwith deposited with the recorder. It will not be permitted to stand in the way of an execution issued at the instance of a judgment creditor until after it shall have been deposited in the proper office. And in certain cases, undoubtedly, an execution may hold the chattels mortgaged, even after the instrument has been placed on file in the office; as where the delay has been so great as to taint the transaction with fraud. But the mere fact that the mortgagee omitted, for several days or weeks, to deposit his mortgage with the clerk of the township or recorder of the county, as the case might require, would by no means render his security void. It would not be void against that class of creditors who were equally remiss with the mortgagee, and took no steps to fasten upon the property for the payment of their debts. Until placed in the proper office, a mortgage of the chattels, in our state, would be void as against other creditors of the mortgagor and subsequent purchasers and mortgagees, whose rights

then attach. But when filed with the clerk or recorded, the instrument becomes valid and effective against all men except those whose rights have thus previously attached."

The rule deducible from the foregoing authorities is that where the mortgagee of personal property has delayed filing his mortgage and taking possession of the property, but the instrument is in fact filed, or the mortgagee obtains and holds actual possession of the property under the mortgage before the right or lien of any third party attaches, the lien of the mortgage is good against a creditor of the mortgagor who subsequently seized the property upon attachment or execution.

There is another line of decisions which hold that the unnecessary delay in filing a chattel mortgage and obtaining possession of the property by the mortgagee renders such mortgage void, not only as to creditors of the mortgagor who became such after the giving of the mortgage, but also to those whose debts were contracted before that time, notwithstanding they did not reduce their claims to judgments and seize the mortgaged chattels under executions or attachments until after the mortgage was placed upon record and possession of the property was obtained by the mortgagee. (See *Karst v. Gane,* 32 N. E. Rep. [N. Y.], 1073, and cases there cited.) This interpretation is reached by giving the word "creditors" in the statute its widest significance. That such was not the intention of the legislature is manifest. To give the word "creditors" in the statute its broad, comprehensive meaning, would make the statute available to creditors of the mortgagor who become such after the filing of the mortgage where there had been a delay in filing, which result was never contemplated by the legislature. Evidently the word was used in some qualified or restricted sense. For an able discussion of that question reference is made to the opinion of Corliss, C. J., in *Union Nat. Bank of Oshkosh v. Oium,* 54 N. W. Rep. [N. Dak.], 1034.

A third construction, adopted by many of the courts,

is that a chattel mortgage is void as to creditors of the mortgagor who become such after the execution of the mortgage and before its filing or the taking of possession of the property by the mortgagee and to such pre-existing creditors who have done anything on the basis of the non-existence of the mortgage, as extending the time of pay-ment. (*Root v. Harl*, 62 Mich., 420; *Cutler v. Steele*, 85 Mich., 627; *Union Nat. Bank of Oshkosh v. Oium*, 54 N. W. Rep. [N. Dak.], 1034, and cases there cited; *First Nat. Bank of Canton v. North*, 51 N. W. Rep. [S. Dak.], 99; *Black Hills Mercantile Co. v. Gardiner*, 58 N. W. Rep. [S. Dak.], 557.) The construction last above stated is supported by numerous well reasoned cases and we might feel inclined to place the same interpretation upon our statute were we at liberty to do so. But we are not. The statute under consideration was borrowed from Ohio, and prior to its adoption by our legislature it had been judicially con-strued in such state. (*Wilson v. Leslie*, 20 O., 161.) The presumption arises that our legislature intended to adopt the statute with that settled construction. (*Coffield v. State*, 44 Neb., 417.) It therefore follows that the lien acquired by the bank under and by virtue of its mortgage, is superior to the rights of the plaintiffs and the inter-venors.

The conclusion reached is not in conflict with *Farmers & Merchants Bank of York v. Anthony*, 39 Neb., 343, and *Spaulding v. Johnson*, 48 Neb., 830. In each of those cases an execution had been levied upon the mortgaged chat-tels before the filing of the mortgage, while in the case at bar the bank had not only filed its mortgage, but had ob-tained actual possession of the property before the rights of other creditors attached to the property.

Since the above was written the writer has ascertained that this court, in *Fitzgerald v. Andrews*, 15 Neb., 52, has construed section 14 of chapter 32, Compiled Statutes, and held as an original proposition that the neglect to file a bill of sale in the nature of a chattel mortgage, al-though making it void as to creditors of the vendor, is

available alone to such creditors as by lawful seizure acquire a lien on the property while in his possession. In that case Dennis O'Leary gave a bill of sale of certain household goods to John Fitzgerald on August 27, 1881, to secure the payment of $50. The instrument was not filed for record, and O'Leary continued to hold possession of the property until the 7th day of October following, when plaintiff took possession of the goods. A few hours afterwards one Andrews caused them to be seized under an execution issued on a judgment which he obtained against O' Leary, and Fitzgerald brought replevin to recover possession of the property. The district court held that the lien of the execution was superior to the right of the plaintiff under his bill of sale, which judgment, on a review of the case by this court, was reversed. LAKE, C. J., speaking for the court, says: "The defendant's judgment, however, was not of itself a lien on the property, nor could it become such except by the levy of an execution issued upon it. But before the defendant's execution was levied, and a lien thus obtained, the plaintiff had perfected his own by taking possession of the property, and thereby obviated the necessity of giving the statutory notice to O'Leary's creditors, by filing his bill of sale, of what his interest in the property was. With the property in the plaintiff's possession, or in that of his agent, his right to it as a security, which before was in peril of seizure by creditors, was made secure; for actual possession of personal property is notice to the world of the possessor's right to it. The controversy between the parties respecting this property is, therefore, really one of priority of lien, in which the evidence shows beyond all doubt that the plaintiff has the advantage of a few hours. The filing of a chattel mortgage is required only where possession of the property is retained by the mortgagor; and, to enable a creditor to take advantage of the neglect to file, he must, by a lawful seizure, acquire a lien on the property while it is in possession of the mortgagor." (See *Kay v. Noll*, 20 Neb., 380; *Sherwin v. Gaghagen*, 39 Neb., 250.)

The decree is affirmed as to the intervenors and reversed as to the plaintiffs.   A decree will be entered in this court in favor of the bank.

DECREE ACCORDINGLY.